Good morning, Your Honors. May it please the Court, my name is Venetia Carpenter-Asui and I represent the plaintiff in this case, Ms. Vicki Bentzien. She is the Assistant Chief of the City and County of Honolulu Emergency Medical Services Division. She engaged in protected activity when she reported that the Chief of the City and County of Honolulu Emergency Services Division stated in a meeting, a staff meeting at Queens Medical Center, in response to Councilman Gary Okino's request for emergency medical services presence at the Family Day picnic at Kapi'olani Park, that we are not going to support those anti-gay Christians. Let's just go right to that. You're hanging your hat right now on saying that we should reverse because of the Moyo case, which is not a new case and you never cited it to the District Court. Why is that? Because I never expected this to be an issue. A reasonable belief is a very low threshold in the Ninth Circuit, according to all of the cases I cited in my brief. Well, Moyo is your best case. So, I mean, why wouldn't you cite your best case to the District Court and give the District Court the advantage of that? Well, it wasn't an issue at that motion for summary judgment stage. We were just going through the Prima Facie case, and this suddenly became an issue when Judge Ezra raised it, that because she's reporting discrimination against 300 members of the public who are not going to get emergency medical services, that may not have an effect on her in the workplace. And that was never something that was brought up. Well, I just don't see how it escapes me how it never could have been an issue, because when someone brings a summary judgment against you, you've got the responsibility to show that there is a triable issue, and Moyo is your best case for that. Well, we also have Payne, where the employee picketed against discrimination of black customers, and that's another third-party case where the Ninth Circuit found that there was protected activity there. Well, if we apply Moyo here, what facts demonstrate that Bencion had a reasonable belief that she was required to discriminate as a condition of her employment? Because I can't tell from this record that she was going to be required to carry there's nothing in the record that indicates that she was going to be required to carry out this alleged discrimination. Well, she is the subordinate under the chief of the emergency medical services, and she would have been required to follow through with that order given at that supervisor's meeting. She went to the policies, which indicate there's no discrimination law in the workplace, and she saw that those policies were in place, and they were bound by those policies as well, and she immediately went to the Sidney County Civil Service Commission and filed a complaint with them. She also went to the Sidney County EEO officer and filed a complaint with her. She went to the Sidney County Human Research Department and filed a complaint with them within 10 days. Did EMS provide services at the picnic? I'm not quite sure, but I believe. If they did, then what's the problem? They did, pursuant to her filing those three EEO complaints against them for the statement that they would not provide services to anti-gay Christians. Okay, is it clear that the department was not going to provide services at the picnic? It's only clear... We have one statement, and EMS ends up providing services. So I'm trying to figure out where she was going to be required to violate the law. This is the chief of the emergency medical services that's making the statement. This is her boss. This is a top person in the government agency that is going to call all the shots on whether or not they provide services to this or that organization. Is it clear that at that meeting, after the chief makes an ill-advised statement, that the decision was made at that meeting that EMS would not be providing services at the picnic? Well, that was the decision. We are not. It doesn't say maybe we should not. It says we're not going to provide emergency medical services. People do a lot of talking. That isn't necessarily a decision. It may be a declaration. It may be an exclamation. It may be a lot of things. I'm trying to figure out what it is and what we know that it was. Well, we know that it was made by the chief of the emergency medical services. We know that it was made in a staff meeting to all of her subordinates of the emergency medical services division and that she said we are not. Not I'm thinking about it. I'm going to decide on it. We've got to talk about it. Just we are not. But they did provide services. We're arguing that it's because my client immediately reported that to three different city and county organizations. So who reversed the decision? I don't know. We don't know how this decision was made then to provide services at the picnic. Correct. And for all we know, it could have been put on the schedule right after the meeting where the chief made this statement. Anything is possible. Okay. So we don't have any evidence then that your client was going to be required to do something that was illegal. Well, after the statement was made and until the decision was made to reverse that statement. Right. But you don't know when the decision was made to reverse it. It could have been made at the initial meeting. There's just no evidence in the record. Right. It wasn't made at that meeting because the meeting ended with her telling everyone in EMS that we were not going to go out there with our ambulances and provide them emergency medical services because they're anti-nutrition. I asked you just a minute ago whether at that meeting, whether they decided to go ahead and provide services and you told me anything was possible. I gather that we really don't know at the end of that meeting what was put on the schedule, what wasn't put on the schedule. Correct. So what you put in the record is the statement. You didn't put anything beyond that. That's all we had. What she said at the meeting to her staff about whether or not they were going to provide services. Right. And we have her position, but do we have anything in the record that said she was going to be required to carry out that on behalf of her employer? Well, just that that is the chief and she is only the assistant chief, so that's her immediate supervisor. Did she speak up in protest at the time? No. But she did go to the city and county. Did anybody else speak up in protest? Nobody said anything. It was just quiet. Okay. But is it possible that nobody really took it seriously and that's why they didn't speak up? Anything's possible. Of course, anything's possible, but my client took it very serious and that's why she filed three EEO complaints. But not seriously enough to speak up at the time. Well, that is her immediate supervisor. This was in a staff meeting and, you know, like all of us, we have a chain of command and we don't get up and tell off our boss at a staff meeting. Well, I also have a question about we have certain requirements in terms of the briefing that we place burdens on appellants as far as that goes and that the court can summarily affirm a district court's decision based on material deficiencies in briefs and excerpts. And I note that in your brief that you don't cite to the record in your brief that excerpts are not organized, they're very hard to follow, and there's no summary argument. There's nothing on the standard of review. The statement, you have to, you're supposed to require, you're required to provide us with a statement of fact that consists only, and you have this copy and pasted allegations from your client's complaint. And so, you know, those are all deficiencies in the brief and we have rules that say that if the brief's not adequate, that that in and of itself is a basis to affirm the district court. Yes, ma'am. Is there anything you would want to add to that? Well, I believe I did cite to the record and we did provide an excerpt of record and was there a summary of the argument or the standard of review? According to the table of contents, it says summary of the argument, page 12. Okay. Okay. You've got about a minute left on the bottle. We'll hear from the other side. Good morning. May it please the court, my name is Deputy Corporation Counsel Curtis Sherwood. I'm here on behalf of Defendant City and County of Honolulu Department of Emergency Services. Why don't you jump right to the whole Moyo area that we were talking about? And, I mean, obviously the Moyo case, whether we agree with it or not, is binding on this court. So why doesn't Moyo permit an employee to seek protection from retaliation under the opposition clause where the party discriminated against is a third-party non-employee? Because the court seemed to hang its hat on that and said, no, that can't be. I'm not certain who you're referring to as a third-party non-employee. The group, is that what you're referring to? The Christian group. I would distinguish Moyo because Moyo dealt with a situation where you had an employee that was forced to discriminate as a term of their employment. There's nothing in the record here that Ms. Bencian wanted to participate in the family day picnic and was prevented from doing so because of some discriminatory policy that was enacted. Now, if she were required to implement not providing services to the anti-gay group, the anti-gay Christian group as it's described, Moyo would allow her to state a cause of action. Well, there's complications there. I mean, whether we agree with it or not, it's Ninth Circuit precedent. Well, it's kind of hard for one thing, Judge, to implement an omission. Well, sure. They say you can go there, but if there's somebody injured who is one of these right-wing Christian anti-gay people and you see them injured, you are not to touch them. You are not to give them medical services. Of course, if there are other people there, police or whatnot, who get injured because of the demonstration, you are there to help them, but you will not lay hands or you will do nothing to help this group. And for that group, you can insert your own blacks or whatever group you choose. So you can, in fact, implement a negative policy. I agree with the scenario that you've posed. I think, just in answer to Judge Callahan's question, it's still pending. You, in fact, can do it. So what's the answer to that? Well, there are a couple other ways to distinguish that particular scenario. For one thing, we're not dealing with emergency services here, and I want to make that perfectly clear for the record. What was discussed at that meeting was whether there was going to be a presence, there was going to be an informational booth at this family day picnic. This is not providing emergency services to someone injured and us refusing to provide those services. That's not what the court is dealing with. That would certainly be a much more serious case, and that is not what the court is dealing with. Well, okay, then, this record here is now the question is who should have provided this, but it appears that there isn't any evidence in the record whether emergency services to family day picnickers, you know, where they were actually provided or what was the, you know, what happened here. I mean, if so, if the city offered, why didn't you offer some evidence that you did, in fact, provide services? Well, Your Honor, we were just attacking the pleadings at this stage, and we were just attacking it under the assumption. We take issue with a lot of the facts as posed in the pleadings, but we were willing to argue the motion under the assumption that the allegations were true as alleged. Well, but Moyo clearly was irrelevant to deciding this case because the district court basically said she couldn't make a claim based on that essentially that she couldn't oppose a practice that affected a third-party non-employee. That's wrong under Moyo. Now, she didn't mention Moyo. Shame on her. You don't talk about it, and I mean, because the court was wrong in that conclusion, but what you could have said is, well, there is a case out there that says that she might have been able to state something, but this is why she didn't. So no one, you know, no one helped the district court out here. I understand the point that the court's making. I mean, winning on summary judgment isn't, you know, if you want to win the, you don't want to just win the battle, you want to win the war. And so the relevant case for the district court is always a nice thing to do. And I think the district court did hang its hat on a relevant case when inciting Breeden and the other case, the Mattson case, because we are just talking about, we are just talking about isolated incidents and isolated comments, which are the subject here. And I would also point out to the court that the comment itself is anti-discriminatory. It's not relating to all Christians. It's relating to a specific group, the organizers of the family day parade, who according to the comment as taken were deemed to be anti-gay. And as I pointed out in our brief. Okay, but can a department not provide emergency services to anti-gay Christians? Let's say that's the group. No. I'm not aware of that. No, you're not. That would be appropriate whether we like that group or not. No, but the statement doesn't say we're not going to provide services. And that's, I think, that's where I need to be clear. What's the statement? The statement says we are not going to support those anti-gay Christians. So I'm trying to understand. Is your position that discrimination against anti-gay Christians is not covered by Title VII? I'm saying that discrimination against this particular group is not covered by Title VII. No, Your Honor, because we're talking about a specific group. And also we're talking about failure to endorse. Okay, but what was the meeting? What was the meeting? The meeting was a field operations supervisor's meeting, right? Correct. And there was a city councilman there? No, there was not a city councilman there. It was just discussed in relation to a request. There was not a city councilman there. Okay, the city councilman had requested emergency medical services at a picnic that was scheduled for a family day parade, right? To be physically present there, yes. And so we're not going to support those anti-gay Christians, and it's the chief. So if the context is a request by the city council for emergency medical services at a picnic and the response is we are not going to support those anti-gay Christians, what would be the inference from that? I understand, Your Honor, and I apologize for the limited record before the court. This actually goes back to the year before when emergency services was present in a parade and there was some flak taken for that because it was known that the parade was sponsored by this anti-gay group. Okay, but I need what's in the record. I don't need background that's not part of the record. So I just want to be clear, it's not emergency services. It's being present at that picnic. You mentioned something about a booth. Correct, Your Honor. This was a booth that EMS might sponsor that would do what? That EMS might be there and talk about what EMS provides, like just kind of to provide information to the people present at the family picnic. And does it violate law for EMS to decide not to have a booth at a picnic? Not that I'm aware of, Your Honor. It would if EMS was declining to provide emergency services that it would otherwise provide. Absolutely. Okay. Does the Court have any other questions? Well, isn't the best course of action to simply say it's not pervasive? So there's no, I mean, she wasn't disciplined for anything. And so we have to have a claim of retaliation or harassment based on, you know, assuming this would be discriminatory conduct. Isn't the best course to say this is not pervasive? And I say the comment is not. Yes, Your Honor. And avoid the sort of sticky morass of, is that a term, sticky morass? The homeowner asked about whether or not discriminating against anti-gay Christians would be a violation of Title VII, and therefore whether ordering an employee to discriminate against a gay group under, I'm sorry, what's the name of that case? Moyer. Moyer, thank you. Under Moyer. It was a single, it was a single, it was a single. Yes, Your Honor, the plaintiff has, plaintiff appellant has in their allegations kind of been vague about the term in which, the period of time in which this incident occurred. But I don't think there's been any allegation that it happened on more than one occasion. It's our position that it only happened once. Okay. Thank you. Thank you. You have a little time left for rebuttal. I believe about a minute left for rebuttal. Yes, Your Honor. As to the retaliation, there was a significant amount of retaliation that she suffered after she made these three EEO complaints about her chief. And those are detailed here in the record. And there was just the single statement. I think we're clear on that. No, but the question is whether in making the complaints about the chief, whether she was making a valid or arguably valid complaint on Title VII. And for the complaint to be arguably a legitimate Title VII complaint, it would have to be some showing that this was pervasive in the work environment. It was just one statement. That's correct, Your Honor. Was it about a booth, or what's this that he's saying about the booth? There's nothing about a booth. This is about being present and participating in the family day parade and picnic. Right, but participating could mean participating in a booth that hands out information on EMS, or it could be about providing ambulance service. Those are two really, really different things. And it was about being there as the emergency medical services with their ambulances in case some old lady fainted. How do I know that from the record? How do I know that from the record? It says in the record, Honor, by June 20, 2006, in response to City Councilman Gary O'Connell's request for emergency medical services presence at the family picnic held at Kapi'olani Park. It doesn't say for a request to set up a brochure booth. That would certainly be a whole different matter, whether we're going to pass out brochures or whether we're going to have an EMS presence. Okay, thank you. Thank you. These cases are just as submitted.
judges: Kozinski, Bybee, Callahan